## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**ANTONETTA LUONGO**,
individually and on behalf of all similarly
situated individuals,

      Plaintiff,

          *v.*

**ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC., ELEMENTIA,
S.A.B. DE C.V.,**

      Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff Antonetta Luongo, on behalf of herself and others similarly situated ("Class Members"), now brings the following complaint.

## NATURE OF ACTION

1.      This is a consumer class action against Defendants Allura USA LLC, Plycem USA LLC d/b/a Allura, Plycem USA, Inc., Elementia USA, Inc., and Elementia S.A.B. DE C.V. (hereinafter referred to as "Defendants") on behalf of all persons and entities who own homes, residences or other structures physically located in Massachusetts, on which Defendants' fiber cement exterior siding is or was installed.

2.      Defendants' Fiber Cement Siding is referred to as "the Siding" in this complaint.

3.      As discussed herein, the Siding on Plaintiff's and Class Members' homes suffers from an inherent defect resulting in the Siding cracking, splitting, and breakage.

4.      The cracking, splitting, and breakage create paths for eventual water and moisture

intrusion as a result.

5.      Despite the Defendants representations that the Siding meets the applicable standards and building codes for performance and weather resistance, the Siding fails prematurely and is not suitable for use as an exterior building product.

6.      However, as a result of the defect in the Siding, Plaintiff and Class Members have incurred and will incur thousands of dollars in damages to replace the Siding.

**THE PARTIES**

7.      Plaintiff Antonetta Luongo is a citizen and resident of Norfolk County, Massachusetts.

8.      Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc. Allura USA LLC has a principal place of business in Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in Massachusetts.

9.      Specifically, Allura USA LLC manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiff's home and those of hundreds and potentially thousands of Class Members in Massachusetts.

10.     Defendant Plycem USA LLC d/b/a Allura was and is a Delaware corporation, with a principal place of business in Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in Massachusetts.

11.     Plycem USA LLC d/b/a Allura manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiff's homes and those of hundreds if not thousands of Class Members in Massachusetts.

12.     Defendant Plycem USA Inc. was and is a Georgia corporation, with a principal place of business in Texas. At all times relevant herein, Plycem USA Inc. transacted and

conducted business in Massachusetts.

13.    Plycem USA Inc. manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiff's homes and those of thousands of Class Members in Massachusetts.

14.    Defendant Elementia USA, Inc. is a Delaware corporation, with a principal place of business in Texas. At all times relevant herein, Elementia USA, Inc. transacted and conducted business in Massachusetts.

15.    Elementia USA, Inc. manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiff's homes and those of thousands of Class Members in Massachusetts.

16.    At all times relevant herein, Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted business in Massachusetts.

17.    Defendant Elementia, S.A.B. de C.V. was and is a corporation organized and existing under the laws of another country. At all times relevant herein, Elementia, S.A. de C.V. conducts and is engaged in business in the State of Massachusetts.

18.    Elementia, S.A.B. de C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Massachusetts.

19.    At all times relevant herein, Defendants jointly transacted and conducted business in Massachusetts.

20.    The Defendants are the agents and/or alter egos of each other, and the corporate interests of these Defendants were amalgamated so that they in effect operated as one and the same entity.

21.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement siding at issue.

22.     At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

## JURISIDICTION AND VENUE

23.     This Court has personal jurisdiction over the parties and has jurisdiction over the subject matter of this action.

24.     Jurisdiction in this Court lies under 28 U.S.C. § 1332(a) (the general diversity statute), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties.

25.     Jurisdiction also lies under § 1332(d)(2) ("CAFA"), because, as to the proposed class, the amount in controversy exceeds $5,000,000, and the citizenship of the proposed class of Massachusetts homeowners is at least minimally diverse from the Defendants.

26.     Venue lies in this Court under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

27.     Defendants hold themselves out to the construction industry and the public at large as being providers of superior, quality, and durable products, including the Siding that is the subject of this litigation.

28.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of Massachusetts.

29.     At all times relevant herein, Defendants designed, manufactured, marketed, sold,

supplied and distributed the Siding.

30.     Upon information and belief, in making the Siding, Defendants used excessive fly ash as in ingredient that became unevenly distributed throughout the Siding.  Instead of fly ash, Defendants could have used common grain and silica used by other manufacturers of fiber cement siding.

31.     Fly ash is a by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of making the Siding.

32.     However, Defendant's decision to use an excessive amount of fly ash resulted in brittleness, porosity problems, and other uniform damages alleged herein—none of which are inherent in the better grain and silica sand design formulations.

33.     Upon information and belief, Defendants learned that the addition of an excessive amount fly ash and/or improper distribution thereof, into its Siding caused brittleness, cracking, splitting, and breakage that creates paths for water intrusion into the home.

34.     Defendants market the Siding as durable, and as offering long-lasting protection for a specified life of 50-years.

35.     Defendants have marketed and represented the Siding is a durable, aesthetically pleasing, and lasting exterior building product, claiming specifically, that the Siding, *inter alia,* "won't rot, warp or splinter and is designed to significantly outperform wood in every way;" is "[U]nlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects;" and "[C]ombining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts

5

considerably longer than traditional exterior wall cladding or vinyl siding."[1]

36.    Plaintiff's subcontractor, as well as Class Members' builders and subcontractors, relied on Defendants' representations and marketing in selecting and purchasing the Siding.

37.    As discussed herein, the Siding has not lived up to Defendants' representations, given the early and severe failure, and given that the Siding requires unexpected maintenance, premature repair, and replacement within the first five (5) years of its service life.

38.    The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiff and members of the Class and lowers the value of the property.

39.    All of Defendants' Siding is uniformly defective such that Plaintiff and Class members' Siding fails before the time periods advertised, marketed, and represented by Defendants or otherwise expected by ordinary consumers purchasing siding.

40.    Specifically, Plaintiff's and Class Members' Siding is cracking, splitting, breaking, and falling off Plaintiff's and Class Member's homes.

41.    The failures of the Siding create leakage paths, which has or will allow water to infiltrate the home and damage other portions of the home, including framing, insulation, drywall, and interior components.

42.    The defect present in the Siding is so severe that Plaintiff and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

43.    As a result of the defect and failures alleged herein, Plaintiff and the Class have suffered actual damages.

44.    The water intrusion and above-described damages resulting from the Siding

---

[1] www.allurausa.com

constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

45.    The above-described defects are due to fundamental design, engineering and manufacturing errors, which are within Defendants' expertise.

46.    Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

47.    The above-described deficiencies exist at the time the Siding leaves the factory.

48.    Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

49.    The Siding on Plaintiff's and Class Members' homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants. This will cost each homeowner thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

50.    Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely by cracking, splitting, warping, and breaking.  Further, Defendants knew or reasonably should have known that such damage will create paths for repeated water intrusion into the home, causing damage to framing components, insulation, drywall, and other property within the home.

51.    These damages begin to manifest within the first five (5) years of the service life of the Siding, despite the Siding having been represented to be a 50-year product by the Defendants.

52.    Consequently, the Siding does not perform in accordance with the representations of the Defendants, or the reasonable expectations of consumers, and is not a suitable building product to be installed on houses or buildings.

53.    Upon information and belief, Defendants have received thousands of complaints from homeowners and builders notifying them that Defendants' Siding is cracking, peeling, and falling off of homes and buildings.

54.    When contacted about the defect and damage to the Siding, the Defendants knowingly misrepresent the cause of the damage to be due to mishandling or installation error by the contractor that installed the Siding.

55.    Despite receiving a litany of complaints from consumers, such as Plaintiff and other members of the Class, Defendants have refused to convey effective notice to consumers about the defects, and refused to fully repair, replace, or otherwise compensate Plaintiff and Class Members for the damage caused by the premature failure of their product.

56.    Defendants' response to customers' claims has been woefully inadequate under the circumstances. Defendants are seeking to limits homeowners' recovery to replacement costs of individual boards of Siding piece by piece. Defendants do not pay the cost of labor or paint to replace failed Siding, and leave the remaining defective product on the home.

57.    Defendants' uniform representations to Plaintiff and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiff and the Class.

58.    Such representations serve to conceal the true nature of Defendants' defective Siding.

59.     At all relevant times, including at the time of sale and during communications related to complaints with the Siding, Defendants had a duty to disclose to Plaintiff and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

60.     Because the defects in Siding are latent and not detectable at the time of purchase until manifestation, Plaintiff and the Class members were not reasonably able to discover their Siding was defective until the damage begins to manifest several years after installation, despite the exercise of due diligence.

61.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.

62.     This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

63.     Plaintiff seeks to recover, for herself and for the Class, the costs of repairing the damage to her property and replacing her Siding.

## PLAINTIFF'S EXPERIENCE

64.     In 2014, Plaintiff contracted for the construction of her home at 63 Wedgewood Drive, Norwood, Massachusetts.

65.     In August of 2014, Plaintiff's contractor selected and purchased Defendants' fiber cement siding for installation on Plaintiff's home.

66.     Plaintiff relied on her contractor in the selection of the Siding, and believed and expected that the Siding was a good quality building material that would last 50-years, as represented by Defendants.

67.     In the summer of 2015, Plaintiff noticed some cracking in two (2) or three (3) pieces of her Siding; however, believing the cracking to be minimal did not think that repair or replacement of the less than one (1) year old Siding to be necessary.

68.     In the summer of 2018, Plaintiff began to notice widespread cracking throughout a significant number of Siding boards.  She contacted her contractor, who provided her with the necessary documents and information to submit a complaint to Allura.

69.     In July of 2018, Plaintiff submitted a complaint to Defendants wherein she notified them that at least "52 pieces [of Siding] are cracked or discolored."  Plaintiff submitted the receipt for the Siding, as well as numerous photographs supporting her claim.

70.     The below photographs were submitted to Defendants and is representative of the widespread cracking in the various Siding boards:



71.    Defendants sent a representative to Plaintiff's home to inspect the Siding, at

which time Plaintiff pointed to cracking and Siding related water intrusion.

72.    On September 25, 2018, Defendants essentially denied Plaintiff's claim, stating:

A review of photographs you submitted coupled with the independent inspection indicates that there is no warrantable condition or manufacturing with the Allura siding material installed at your home.

…Based off the information provided by yourself and the independent inspector, it would appear that the concerns are related to installation deviations.

73.    Despite Defendants' misrepresentation that the cause of the damage was installation errors, Defendants' offered Plaintiff $160.00 as a "gesture of goodwill" should Plaintiff agree to sign a document "accepting the offer as a full and final settlement and waive any further warranty rights to the product being claimed."

74.    Given Defendants' "gesture of goodwill" was woefully inadequate, Plaintiff did not accept or waive her rights with regard to the Siding.

75.    Upon information and belief, Defendants' have engaged and continue to engage in a pattern of denying the Siding claims due to alleged installation errors, while simultaneously offering homeowners "gestures of goodwill" in an effort to induce them to waive their rights with regard to the defective Siding.

## ESTOPPEL FROM THE STATUTE OF LIMITATIONS OR STATUTE OF REPOSE

76.    Defendants knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff, Class members and the general public, while continually marketing the Siding as dependable.

77.    Defendants' acts of concealment include failing to disclose that the Siding was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

78.    Plaintiff did not discover that the Siding suffers from an inherent defect until recently.

79.    Defendants made affirmative misrepresentations to Plaintiff and Class Members when receiving complaints about the Siding, including that the damage was caused by installation errors.  Defendants knew these statements to be untrue at the time they were made, failed to disclose the true defective nature of the Siding, and did so with the intent to conceal or suppress the truth so that Plaintiff and Class Members would not pursue claims against Defendants and/or would not otherwise recognize that the Siding was defective until after the statute of limitations or statute of repose had expired.

80.    Accordingly, Defendants are estopped from asserting the statute of limitations or statute of repose as bars to this action.

## ESTOPPEL FROM PLEADING LIMITATIONS AND DISCLAIMERS

81.    Defendants are also estopped from relying on any limitations, restrictions, or disclaimers pertaining to Plaintiff's and Class Members' rights, as a defense to Plaintiff's and Class Members' claims.

82.    By virtue of Defendants' acts, the Siding installed in Plaintiff's and Class Members' residences has not lived up to Defendants' marketing, advertisements, and other representations, and given the defective condition of the Siding and the premature failure the Siding that requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

83.    Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials

and other representations disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff and Class Members.

84.     Defendants' shipping of the Siding with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects makes any limitations or restrictions as to Plaintiff and Class Members' rights null, and therefore void *ab initio.*

## CLASS ACTION ALLEGATIONS

85.     Plaintiff brings this class action on behalf of herself and a Class defined as follows:

> **All persons and entities owning structures within the State of Massachusetts on which Defendants' fiber cement Siding is installed.**

The class is defined so as to exclude: (a) any Judge or Magistrate Judge presiding over this action and members of their families; (b) Defendants and any employee of Defendants; (c) any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and its legal representatives, assigns, and successors; and (d) any person who has released Defendants or is currently in litigation with Defendants related to Defendants' Siding.

Plaintiff proposes that the Class be divided into subclasses if necessary to align class interests.

86.     Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(3) and (c)(4).

87.     Plaintiff and Class Members can demonstrate that common questions of law and fact predominate over questions affecting only individual class members. R. 23(b)(3). Those questions include:

    (a)  Whether the Siding is defective;

    (b)  Whether the Siding is subject to cracking and is not suitable for use as an exterior siding product for the duration of time advertised, marketed, and

warranted;

(c) Whether the Siding will continue to crack and prematurely fail over time;

(d) Whether Defendants were negligent in their design and manufacture of the Siding;

(e) Whether Defendants knew or should have known about the defective condition of the Siding;

(f) Whether Defendants concealed and/or failed to disclose the defective condition of the Siding to consumers;

(g) Whether Defendants breached their implied warranties;

(h) Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiff and Class Members to statutory or punitive damages from Defendants;

(i) Whether Defendants' conduct, acts and omissions constitute a breach of contract, violation of the building code, negligence, negligence *per se*, negligent misrepresentations and/or violation of the Massachusetts consumer protection statute.

(j) Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

(k) Whether Defendants' conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive; and

(l) Whether Plaintiff and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding.

88.    Plaintiff can show that the class action is a superior device for resolving these claims. R. 23(b)(3). It is superior because individual joinder of all members of the Class is impracticable.

89.    If individual Class Members were required to bring separate actions, this Court and Courts throughout Massachusetts would be confronted with a multiplicity of lawsuits burdening the court system, while also creating the risk of inconsistent rulings and contradictory judgments.

90.     Moreover, Plaintiff envisions no unusual difficulty in the management of this action as a class action.

91.     Absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually given the expert and other costs associated with investigation and pursuit of a product liability action, and would have no effective remedy to vindicate their claims.

92.     Plaintiff can also meet the requirements of Fed. R. Civ. P. 23(a).

93.     *Numerosity*, 23(a)(1): Members of the Class are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of thousands of members dispersed throughout the state of Massachusetts, the joinder of whom in one action is impractical.

94.     Upon information and belief, the Class is ascertainable and identifiable from Defendants' records, builders' and contractors' records, and through looking at the Siding.

95.     *Commonality*, 23(a)(2)*:* The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their representations, and omissions.

96.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.

97.     *Typicality*, 23(a)(3)*:* Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, and selling the defective Siding and Defendants' conduct in concealing the defect in the Siding to owners, contractors, developers, and suppliers. There is nothing

unusual or atypical about the way the Siding is prematurely failing on Plaintiff's house.

98.    *Adequate Representation*, 23(a)(4)*:* Plaintiff will fairly and adequately protect the interests of the Class members. She has no interests antagonistic to those of the proposed Class.

99.    Further, Plaintiff has retained counsel experienced in the prosecution of complex class actions and construction defect cases. Plaintiff's counsel is adequately capitalized to handle litigation of this size.

**FIRST CAUSE OF ACTION**
***Breach of Implied Warranties***

100.    The above allegations are incorporated as fully as if stated verbatim herein.

101.    At all times mentioned herein, Defendants manufactured or supplied the Siding, and prior to the time the Siding was purchased by Plaintiff's and Class Members' contractors or one of its entities or subcontractors, Defendants impliedly warranted to the builders, subcontractors, Plaintiff, Class Members, and the general public that the Siding was of merchantable quality and fit for the use for which it was intended.

102.    However, as described herein, the Siding was unfit for its intended use and it was not of merchantable quality, as warranted, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.

103.    The Siding caused Plaintiff and Class members to sustain damages as herein alleged.

104.    The Siding was similarly unfit for its particular purpose to be used on Plaintiff's and Class Members' homes.

105.    Defendants failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

106.    In addition, any attempts to waive or disclaim these warranties were not conspicuous to the purchasers or homeowners, and are otherwise unenforceable.

107.    As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
#### *Negligent Misrepresentation*

108.    The above allegations are incorporated as fully as if stated verbatim herein.

109.    Defendants, through their marketing. materials, website, brochures, product literature, and agents, made representations to the Plaintiff and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

110.    Defendants transmitted said representations to the Plaintiff and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the premature failure and consequential damages that would or could likely result from their Siding' defects.

111.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiff and Class Members, builders, suppliers and the public.

112.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiff and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

113.    The Plaintiff and Class Members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

### THIRD CAUSE OF ACTION
#### *Negligence*

114.    The above allegations are incorporated as fully as if stated verbatim herein.

115.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

116.    Defendants breached their duty to Plaintiff and the Class by designing, manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

117.    Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendants.

118.    As a direct and proximate cause of Defendants' negligence, Plaintiff and the Class have suffered actual damages in that the Siding was purchased by an agent of Plaintiff or the Class Members and installed on Plaintiff's and Class Members' homes.

119.    Upon information and belief, the defect in the Siding causes damage to Plaintiff's and Class members' existing homes in addition to damage to the siding itself, by allowing moisture to enter through the Siding.

120.    These failures have caused and will continue to cause Plaintiff and the Class Members to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

WHEREFORE, Plaintiff prays that this Court will certify a class and for judgment against Defendants, for:

1.    For an order certifying the Class, appointing Plaintiff as representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class;

2.    Declare that Defendants are financially responsible for notifying all Class members of

the problems with the Siding;

3.  Enter an award of attorneys' fees and costs, as allowed by statute and law;

4.  Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

5.  Enter an award for compensatory damages sustained by Plaintiff and Class;

6.  Enter and order for payment of costs of suit herein incurred; and

7.  Grant such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,
**Bernheim Dolinsky & Kelley, LLC**


____/s/ Walter Kelley_____
Walter Kelley, Esquire
BBO# 670525
Four Court Street
Plymouth, MA 02360
Tel: (508) 747-8854
Fax: (508) 747-8857
walterkelley@duejustice.com

DATED: 01/22/2019